Filed 7/14/16  P. v. Stapleton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KIRK LEON STAPLETON, <br><br> Defendant and Appellant. | D068519 <br><br><br> (Super. Ct. No. SCN323193) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Kirk Leon Stapleton appeals a judgment following his jury conviction of first degree murder (Pen. Code, § 187, subd. (a)).[1] On appeal, he contends the prosecutor committed prejudicial error by misstating during his closing argument the law on the heat of passion theory of voluntary manslaughter.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Stapleton, together with his brothers John and Scot and other roommates, lived in his Vista family home. In August, Juanita Kawash, Stapleton's girlfriend, had been living with him in the garage for two months.

In August 2013, Stapleton and Kawash had a heated argument in the front yard driveway. He accused her of "giving it to everybody else [for] free." She asked him to leave her alone. A neighbor, Bonnie Berumen, heard Kawash say, "help me, help me." Another neighbor, Ysidro Bazan, saw Stapleton pull Kawash by her hair. Stapleton appeared very angry and Kawash was crying and yelling. Stapleton threw her to the ground and appeared to be trying to take her inside the house.

Scot heard the arguing, went to see what was happening, and saw Stapleton with his hands on Kawash's shoulders. John also heard the argument in the front yard. He heard Stapleton yell at Kawash: "Fucking bitch. Why did you do that to me, bitch?" Kawash replied, "I love you, Kirk." He said, "Fuck you, bitch." Looking out a window, John saw Stapleton had a butcher knife in his hand and asked him, "[W]hat the fuck [are] you doing?" The next time John looked out the window, Stapleton did not have the

---

[1]     All statutory references are to the Penal Code.

2

knife, but he was dragging Kawash. At some point during the argument, John heard Stapleton say something about Kawash having AIDS and that he had proof she had exposed him to it.[2] Stapleton pulled Kawash inside the house by her hair. As he pulled her through the living room and kitchen, John left to walk his dog.[3] When John returned, the kitchen was "destroyed." Its curtains were torn down, dishes were shattered, and things were everywhere.[4] A bathroom sink had been pulled off of the wall and its drain pipe broken.

The next morning, John asked Stapleton about Kawash. Stapleton told him, "I killed Juanita. What should I do? Are you going to snitch on me?" He said he had killed her by accident. Later that day, Stapleton asked John for some trash bags and tape. John gave him some "jumbo" bags. John also kept a shopping cart in their backyard.

A video recording from a surveillance camera showed Stapleton pushing a shopping cart to a dumpster behind a grocery store at about 10:57 a.m. on August 18, 2013. He was drinking a beer. He tried to lift a large object wrapped in a black bag from the cart and toward the dumpster, but it apparently was too heavy and he placed it on the

---

[2]     Stapleton's wallet was later found to have a letter indicating Kawash's former boyfriend, Angel Pineda, was HIV positive.

[3]     John had been beaten by Stapleton in the past and was scared.

[4]     Kawash's blood was later found on a space heater in the kitchen.

ground next to the dumpster. He left a beer can at the scene.[5] On August 19, an employee discovered Kawash's body.

The medical examiner found Kawash had suffered significant traumatic or violent injuries, including a fractured jaw, skull fractures, and broken ribs and vertebrae, consistent with her being punched, kicked, and stomped. She concluded the cause of Kawash's death was homicidal violence and that she was alive when the injuries were inflicted.

An information charged Stapleton with one count of murder (§ 187, subd. (a)) and alleged he had a prison prior within the meaning of sections 667.5, subdivision (b), and 668. At trial, the prosecution presented evidence substantially as described above. The jury found Stapleton guilty of first degree murder. The trial court sentenced him to an indeterminate term of 25 years to life for his murder conviction and a determinate term of one year for the section 667.5, subdivision (b), and section 668 enhancement.[6] Stapleton timely filed a notice of appeal.

---

[5]     Stapleton's DNA was later found on the beer can.

[6]     Although the parties do not cite to the record showing whether that enhancement was based on Stapleton's admission of the truth of the allegation or the trial court's true finding on the allegation, we shall presume the court correctly imposed the enhancement under sections 667.5, subdivision (b), and 668 because he does not challenge it on appeal.

DISCUSSION

*Prosecutorial Error*

Stapleton contends the prosecutor committed prejudicial error by misstating during his closing argument the law on the heat of passion theory of voluntary manslaughter. He asserts the prosecutor wrongly argued in closing that if he killed Kawash in anger it was murder and not voluntary manslaughter.

A

"A prosecutor's misconduct [or error] violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct [or error] that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1202.)

"When the issue 'focuses on comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citations.] Moreover, prosecutors 'have wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.' " (*People v. Cole*, *supra*, 33 Cal.4th at pp. 1202-1203.)

Although a prosecutor is given wide latitude in vigorously arguing the People's case, the prosecutor may not misstate the law. (*People v. Bell* (1989) 49 Cal.3d 502, 538 (*Bell*); *People v. Bandhauer* (1967) 66 Cal.2d 524, 529.) The prosecutor "has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper. Opposing counsel may not complain on appeal if the reasoning is faulty or the conclusions are illogical because these are matters for the jury to determine." (*People v. Thomas* (1992) 2 Cal.4th 489, 526.)

Importantly for this case, arguments of a prosecutor must be considered in the context in which they are made. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1224, fn. 21.) When an appellant "singles out words and phrases, or at most a few sentences, to demonstrate [prosecutorial] misconduct [or error], we must view the statements in the context of the [prosecutor's] argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522; see also *People v. Lucas* (1995) 12 Cal.4th 415, 475 ["Viewing the [prosecutor's] statements in the context of the argument as a whole [citation], we do not believe the prosecutor argued that the jury should disregard the law on the defense of unconsciousness. Moreover, viewing the challenged statements in context, we do not believe there is a reasonable likelihood that the jury understood him to be making such an argument."].)

Absent a fundamentally unfair trial under the federal Constitution, prosecutorial misconduct or error does not require reversal of the judgment unless it was prejudicial under state law, i.e., it is reasonably probable the defendant would have obtained a more favorable verdict absent the misconduct or error. (*Bell, supra,* 49 Cal.3d at pp. 534, 542;

6

*People v. Castillo* (2008) 168 Cal.App.4th 364, 386 (*Castillo*); *People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*).) If the prosecutorial misconduct or error renders the defendant's trial fundamentally unfair under the federal Constitution, reversal of the judgment is required unless the misconduct or error is harmless beyond a reasonable doubt. (*Castillo*, at pp. 386-387, fn. 9; *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323-1324.)

B

The trial court instructed the jury on first and second degree murder and voluntary manslaughter based on a theory of heat of passion. The court instructed with CALCRIM No. 522 on provocation, as follows:

> "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. If you can conclude that the defendant committed murder, but was provoked, consider the provocation in deciding whether the murder was first- or second-degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter."

The court also instructed with CALCRIM No. 570 on voluntary manslaughter, as follows:

> "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or the heat of passion if three factors are present: First, the defendant was provoked. Second, as a result of that provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or his judgment. And finally, the third requirement is if the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.

7

"Now, heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.

"It is not enough that the defendant was simply provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than from judgment. If enough time passed between the provocation and the killing for a person of average disposition to cool off and regain his or her clear reasoning or judgment, then the killing is not reduced to voluntary manslaughter on this basis.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder."[7]

The court also instructed with CALCRIM No. 200 that the jury "must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

In closing, the prosecutor argued that Stapleton committed murder in the first degree and did not kill Kawash in a heat of passion. He argued that when Stapleton was

---

[7]   A typed copy of CALCRIM No. 570 is missing from the clerk's transcript. It is unclear from the record whether the jury was given a typed copy of CALCRIM No. 570 along with typed copies of the trial court's other instructions for use in its deliberations.

8

angry at her and held a knife to her throat in the front yard, there may have been a good argument for heat of passion. However, when he decided not to use the knife there or kill her in the front yard, the living room, or the kitchen, he thought about it and decided to kill her before he acted. The prosecutor argued that although Stapleton was angry and killed her passionately, anger and heat of passion were two different terms. He asked the jury to read over the applicable jury instructions. The prosecutor argued Stapleton acted in a cold, deliberate manner in dragging Kawash into the house and into the garage before killing her there. The prosecutor referred to CALCRIM No. 570 that instructed the jury on voluntary manslaughter on a heat of passion theory. He noted provocation is required, causing a reasonable person to act rashly, without thinking, and under the direct and immediate influence of that emotion. He argued there was no evidence of provocation in this case and the evidence instead showed Stapleton killed Kawash in a deliberate, premeditated act of murder.

Stapleton's counsel argued the evidence showed Stapleton accidentally beat Kawash to death in the heat of passion after discovering her ex-boyfriend had tested positive for the HIV virus and she had exposed him (Stapleton) to the virus. She argued Stapleton's passion overcame his reason.

In rebuttal, the prosecutor argued there was no evidence Kawash was HIV positive. He also argued the evidence did not show Stapleton "lost it" (i.e., acted in a heat of passion). He argued: "[Stapleton] may be mad. Let's focus on that for a second. He's mad. Mad enough to kill? Okay. That's murder. Angry enough to kill. That's murder." The trial court overruled an objection by Stapleton's counsel that the

9

prosecutor's argument misstated the law. The prosecutor again argued that if Stapleton had used the knife in the front yard, he might have acted in a heat of passion. However, based on Stapleton's actions, he argued Stapleton did not act in a heat of passion and instead made a decision to kill Kawash.

C

Stapleton asserts the prosecutor committed prejudicial error and misstated the law when he argued in closing that being mad enough to kill was murder and being angry enough to kill was murder. However, based on our review of the prosecutor's argument as a whole, we conclude the prosecutor's challenged statements, in the context of his entire closing argument, did not misstate the law.

In arguing the evidence showed Stapleton committed first degree murder and not voluntary manslaughter on a heat of passion theory, the prosecutor asked the jury to refer to the trial court's instructions and discussed CALCRIM No. 570 on the heat of passion theory of voluntary manslaughter. He noted provocation is required that would cause a reasonable person to act rashly, without thinking, and under the direct and immediate influence of that emotion. The prosecutor argued that although Stapleton was angry at Kawash and held a knife to her throat in the front yard, he made the decision not to use the knife there or kill her in the front yard, the living room, or the kitchen, but instead acted in a cold, deliberate manner in dragging her into the house and into the garage before killing her there. Accordingly, the prosecutor argued, implicitly, if not expressly, that Stapleton did *not* act rashly, without thinking, or under the direct and immediate

10

influence of anger or other emotion and therefore did not kill Kawash in the heat of passion.

After his counsel argued Stapleton beat Kawash to death in the heat of passion when he discovered her ex-boyfriend had tested positive for the HIV virus and she had exposed him (Stapleton) to the virus, the prosecutor argued in rebuttal that the evidence did not show Stapleton acted in the heat of passion. He argued: "[Stapleton] may be mad. . . . He's mad. Mad enough to kill? Okay. That's murder. Angry enough to kill. That's murder." The prosecutor again argued that if Stapleton had used the knife in the front yard, he might have acted in the heat of passion. However, based on Stapleton's actions, he argued Stapleton did not act in the heat of passion and instead made a decision to kill Kawash.

By arguing in rebuttal that Stapleton may have been mad or angry enough to kill and therefore commit murder, the prosecutor's statements, when considered in context with his entire closing argument, did not misstate the law. Rather, considering the prosecutor's prior statements, the jury could not have reasonably understood the prosecutor was arguing that any killing committed in anger was necessarily murder and not voluntary manslaughter. Rather, CALCRIM No. 570, to which the prosecutor had previously referred, instructed the jury on voluntary manslaughter that anger or another intense emotion is not, by itself, sufficient provocation, but it must, in addition, cause a person to act without due deliberation and reflection and under the direct and immediate influence of provocation. Therefore, the prosecutor's challenged statements argued, in effect, that acting in anger, by itself, did not preclude a finding of murder. "One does not

11

act rashly under [the heat of passion theory] simply by acting imprudently or out of anger. Even imprudent conduct done while angry is ordinarily the product of some judgment and thought, however fleeting. This is not the type of truly reactive conduct contemplated by the [heat of passion] standard." (*People v. Beltran* (2013) 56 Cal.4th 935, 950.) Considering the prosecutor's closing argument as a whole, we conclude the jury presumably, and reasonably, understood the prosecutor's challenged statements were made in the context of his broader argument that correctly set forth the applicable law of the heat of passion theory of voluntary manslaughter. (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1224, fn. 21; *People v. Dennis*, *supra*, 17 Cal.4th at p. 522; *People v. Lucas*, *supra*, 12 Cal.4th at p. 475.) Based on our review of the record, there is no " 'reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Cole*, *supra*, 33 Cal.4th at pp. 1202-1203.) The prosecutor did not err as Stapleton asserts.

D

Assuming arguendo the prosecutor's challenged statements may have misstated applicable law, we nevertheless conclude reversal of Stapleton's murder conviction is not required. First, any error the prosecutor made in his closing argument did not deny Stapleton a fundamentally fair trial under the United States Constitution. He had notice of the charge against him and an opportunity to present evidence, cross-examine witnesses against him, and to otherwise present a defense at trial. Furthermore, the trial court correctly instructed the jury on first and second degree murder and voluntary manslaughter. Importantly, the court also instructed the jury with CALCRIM No. 200

12

that if it "believe[d] that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." To the extent the prosecutor's challenged statements in closing conflicted with the court's instructions, the jury presumably followed the court's instructions. Because Stapleton was not denied a fundamentally fair trial, we conclude there was no prosecutorial error under the United States Constitution. (*People v. Morales* (2001) 25 Cal.4th 34, 44; *Castillo*, *supra*, 168 Cal.App.4th at pp. 386-387, fn. 9; *People v. Bordelon*, *supra*, 162 Cal.App.4th at pp. 1323-1324.)

To the extent the prosecutor's challenged statements were deceptive or reprehensible and therefore error under California law, we nevertheless conclude it is not reasonably probable Stapleton would have received a more favorable verdict absent that error, and therefore any error is harmless and does not require reversal of the judgment. (*Bell*, *supra*, 49 Cal.3d at pp. 534, 542; *Castillo*, *supra*, 168 Cal.App.4th at p. 386; *Crew*, *supra*, 31 Cal.4th at p. 839.) As discussed above, the trial court correctly instructed the jury on first and second degree murder and voluntary manslaughter. The court also instructed the jury that if it "believe[d] that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." Accordingly, to the extent the prosecutor's challenged statements in closing conflicted with the court's instructions, the jury presumably followed the court's instructions. Furthermore, there was strong evidence presented by the prosecution showing Stapleton killed Kawash after making a decision to do so and therefore did not act rashly, without thinking, and under the direct and immediate influence of anger or other intense emotion. As the prosecutor argued in closing, the evidence showed Stapleton held a knife in the front yard while arguing with

13

Kawash. When his brother asked him what he was doing, Stapleton got rid of the knife and dragged Kawash from the front yard, through the living room and kitchen, and into the garage, where he then beat her to death. The jury reasonably inferred from that evidence that Stapleton's thought processes in taking those actions precluded a finding he acted without thinking and under the direct and immediate influence of anger or other intense emotion (i.e., heat of passion voluntary manslaughter). Furthermore, because the jury found Stapleton guilty of first degree murder, it necessarily found he killed Kawash with premeditation and deliberation. Its finding of premeditation and deliberation is inconsistent with a finding that he acted without thinking, as required for heat of passion voluntary manslaughter. It is not reasonably probable Stapleton would have received a more favorable verdict had the prosecutor not erred as he asserts. (*Bell*, at pp. 534, 542; *Castillo*, at p. 386; *Crew*, at p. 839.)

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.

14